IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| SANDRA Y. ROUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:16-1089-DCN |
| vs. | ) | **ORDER** |
| | ) | |
| NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration*, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

This matter is before the court on United States Magistrate Judge Kevin F. McDonald's Report and Recommendation ("R&R") that the court affirm Acting Commissioner of Social Security Nancy A. Berryhill's[1] (the "Commissioner") decision denying claimant Sandra Y. Rouse's ("Rouse") application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the court rejects the R&R, and reverses and remands the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

Rouse filed for SSI and DIB on April 7, 2014, alleging that she became disabled beginning January 27, 2014. Tr. 20. She attributed her inability to work to her Post-Traumatic Stress Disorder ("PTSD"), Attention Deficit Disorder ("ADD"),

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on Jan 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Nancy A. Berryhill for Carolyn W. Colvin as Defendant in this action."

anxiety attacks, depression, and other debilitating emotional conditions resulting from the verbal, physical, and sexual she experienced both as a child and an adult. Tr. 65, 80, 202–205, 232–237, 278. Her claims were denied initially and upon reconsideration. Tr. 133–137, 145–152. At Rouse's request, a hearing was held before Administrative Law Judge Ronald Sweeda (the "ALJ") on October 7, 2105, where Rouse and Thomas C. Neil, an impartial vocational expert ("VE") testified. Tr. 17–64, 153–154. On November 3, 2015, the ALJ issued a decision finding that Rouse was not disabled under the Social Security Act. Tr. 17–34. Following the Appeals Council's denial of Rouse's request for review on February 17, 2016, the ALJ's decision became the final decision of the Commissioner. Tr. 1–4.

Rouse then filed this action seeking review of the ALJ's decision. ECF No. 1. On July 6, 2017, the Magistrate Judge issued an R&R recommending that this court affirm the ALJ's decision. ECF No. 19. Rouse filed objections to the R&R on July 20, 2017, ECF No. 20, and the Commissioner filed a reply on August 2, 2017. ECF No. 22. This matter is now ripe for the court's review.

### B. Medical History

Because Rouse's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and only notes a few relevant facts. Rouse was born on February 21, 1963, and was 50 years old on her alleged disability onset date. Tr. 39, 202, 232. She communicates in English and has a high school education, as well as past relevant work experience as a pharmacy technician and cashier. Tr. 40, 279–280, 306.

### C. ALJ's Decision

The ALJ employed the statutorily required five-step sequential evaluation process to determine if Rouse was disabled between January 27, 2014 and October 7, 2105, the date of the hearing. Tr. 17–29. First, the ALJ determined that Rouse had not engaged in substantial gainful activity during the relevant period. Tr. 22. Second, the ALJ found that Rouse had the following severe impairments: partial rotator cuff tear, degenerative disc disease, anxiety disorder, personality disorder, and depression. Tr. 22. At step three, the ALJ found that Rouse's combination of impairments did not meet or medically equal any of the listed impairments in the Agency's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). Tr. 22–24. Before reaching the fourth step, the ALJ found that Rouse had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with certain restrictions.[2] Tr. 24–26. The ALJ noted that Rouse can perform simple, repetitive tasks with occasional contact with the general public, and could adjust to occasional changes in her work setting and procedure, but could not work in a team setting or a fast-paced environment. Id. At step four, the ALJ determined that Rouse was not capable of performing any past relevant work as a pharmacy technician and cashier. Tr. 28. Finally, at step five, the ALJ determined that, considering Rouse's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she could perform. Tr. 28–29. The ALJ concluded that Rouse was not disabled during the period at issue. Tr. 29.

---

[2] Specifically, the ALJ noted that Rouse could not engage in frequent climbing, stooping, crouching, crawling, or pushing or pulling with the upper extremities, but could occasionally engage in overhead reaching. Tr. 24.

## II.   STANDARD

This court is charged with conducting a de novo review of any portion of the R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Id. (internal citations omitted).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner ] if his decision is supported by substantial evidence."  Id.  Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).  However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## III. DISCUSSION

Rouse raises five objections to the R&R. First, Rouse objects to the R&R's finding that the ALJ properly discredited the opinion of Leanne K. Russell, her treating counselor. ECF No. 20 at 2–4. She next objects to the R&R "minimiz[ing] the notion that the treating therapist's opinion was supported by the opinion of her treating psychiatrist, Dr. [Lori B.] Gerding."[3] Id. at 4–6. Rouse also contends that the R&R erred in finding that the ALJ afforded appropriate weight to the assessments of the state agency medical consultants. Id. at 7. She further objects to the R&R's conclusion that the ALJ correctly evaluated her subjective complaints of physical pain and inability to work due to her mental health issues. Id. at 7–9. Finally, Rouse objects to the manner in which the ALJ questioned the VE. Since the court remands based upon the first two objections, it will not address the remainder of Rouse's objections to the R&R.

### A. Weight Given to Treating Counselor

Rouse objects to the R&R's assessment that the ALJ properly discredited the opinion of her treating counselor Russell. ECF No. 20 at 2. The ALJ discusses two items of evidence from Russell, a Treating Source Statement—complete with a Mental Residual Functional Capacity evaluation—and a letter to the Social Security

---

[3] Rouse and the R&R refer to Russell as a treating therapist, whereas the ALJ's decision refers to her as a counselor. Tr. 26. The court adopts the language of the ALJ's decision, even though the analysis would be the same if Russell were a therapist. See SSR 06-03P, 2006 WL 2329939, at 1–2 (Aug. 9, 2006) (listing therapists as "medical sources who are not 'acceptable medical sources'" but whose opinion should still be considered "to make a disability determination"), Mitchell v. Colvin, 2014 WL 4436332, at *4 (E.D.N.C. Sept. 9, 2014) (stating that an ALJ must consider forms completed by therapists).

Administration. Tr. 523–30. In considering these, the ALJ gave the following reasons for not finding her opinion credible: (1) "[t]he counseling notes reflect that much of the claimant's anxiety has arisen out of concern of where the claimant would reside when her daughter got married," and (2) her "opinion fails to address the issue of non-compliance with the suggested medication regimen." Tr. 26. Ultimately, the ALJ found that Russell's "opinion does not reflect the same degree of severity as noted in the treatment notes." Id. The Commissioner responded to Rouse's objection to this finding, first arguing that the ALJ's decision is correct based on the "simple fact that her therapist did not consider her concerns about her living arrangements when providing her opinion,"[4] ECF No. 22 at 2, and because Russell failed to address the fact that "Plaintiff's symptoms significantly improved while medicated," id. at 2–3. The court disagrees with the ALJ's findings on this point.

In listing the types of evidence considered by ALJs when determining disability, 20 C.F.R. § 404.1527(f) discusses "[o]pinions from medical sources who are not acceptable medical sources and from nonmedical sources." ALJs are to evaluate these opinions using the same factors relied upon for assessing all other medical opinions, see § 404.1527(c)(1)–(c)(6), because opinions from nonmedical

---

[4] The Commissioner appears to interpret the ALJ's comment regarding Russell's counselling notes—that they "reflect that much of the claimant's anxiety has arisen out of concern of where the claimant would reside when her daughter got married"—differently than the court. By the court's understanding, the ALJ discredits Russell's opinion partly because he believes it puts too much weight on the anxiety Rouse felt from moving, without adequately addressing the more serious mental health issues that are reflected in the rest of the treatment notes in the record. By contrast, the Commissioner seems to interpret the comment to mean that the ALJ believes Russell should have given *more* attention to Rouse's moving anxiety in drafting her opinion.

sources may still "reflect the source's judgment about some of the same issues addressed in the medical opinions from acceptable medical sources," § 404.1527(f)(1). Additionally, the "adjudicator generally should explain the weight given to opinions from these sources." § 404.1527(f)(1)–(2). Counselors like Russell fall under the category of "nonmedical sources," and the ALJ should consider her opinion when assessing all of the evidence. See SSR 06-03P at 2.

Even though the ALJ considered Russell's opinion, he deemed it not credible on two grounds. Tr. 26. The court finds that the ALJ's grounds for rejecting Russell's opinion are not supported by substantial evidence. First, the ALJ finds that Russell's Treating Source Statement and letter to the Social Security Administration are not credible, because these "counseling notes reflect that much of the claimant's anxiety has arisen out of concern of where the claimant would reside when her daughter got married," and therefore are not consistent with the "degree of severity as noted in the treatment notes." Tr. 26. However, the Treating Source Statement and letter—four total pages of information from Russell assessing Rouse's mental health and functioning capacity—collectively only dedicate one sentence to the fact that Rouse would have to leave her daughter's home soon because of her daughter's impending marriage. Tr. 523–30. The rest of the letter and treating source statement are about the range of mental health issues that Rouse faces, such as "Axis I disorders including PTSD, Panic Disorder, Major Depressive Disorder, Alcohol Dependence, and Axis II Borderline Personality Disorder," attributing most of Rouse's issues to the abuse she received as a child. Tr. 530. Russell clearly states that Rouse is "unable to work due to a lack of being able to have appropriate relationship with

others," and that the "severe limitations" resulting from of all of her mental and emotional restrictions will render her homeless. Id. Therefore, the court finds that substantial evidence does not support the ALJ's conclusion that Russell's opinion does not reflect the same degree of severity as the rest of the treatment notes in the record—Russell addresses Rouse's severe mental and emotional limitations resulting from her childhood abuse, in addition to mentioning the potential for Rouse to be forced to leave her daughter's home.

Second, the ALJ found Russell's opinion not credible because it "fails to address the issue of non-compliance with the suggested medication regimen." Tr. 26. However, the purpose of the Treating Source Statement and letter submitted by Russell is to assess Rouse's mental functioning and ability to engage in work as of the date of those examinations. They are not intended to act as a complete, detailed mental health <u>history</u>. The absence of discussion about Rouse's prior non-compliance with medical advice and medication prescriptions does not in and of itself render Russell's opinion as not credible. Therefore, on remand the court directs the ALJ to explain further why he does not find the opinion of Russell, a treating counselor, not to be credible.

      **B.**      **Disregarding Dr. Gerding's Medical Opinion**

Rouse also objects to the Magistrate Judge's agreement with how the ALJ treated the evidence offered by Dr. Gerding, Rouse's treating psychiatrist. While the ALJ does not conclude that Dr. Gerding's opinion did not constitute a "medical opinion," the ALJ states that Dr. Gerding "did not offer an opinion of the claimant's functional limitations." Tr. 26. The Commissioner first makes the argument that Dr.

Gerding's medical source statement is not a medical opinion as defined in § 404.1527(a), in her Memorandum in Support of the Commissioner's Decision and in Response to the Plaintiff's Brief.[5] ECF No. 16 at 8. The R&R reiterates the ALJ's observation, again without concluding that Dr. Gerding failed to offer a "medical opinion." ECF No. 19 at at 25. Rouse objects to the R&R, arguing it is "incorrect in suggesting that the findings of Dr. Gerding do not themselves constitute medical opinion evidence." ECF No. 20 at 4. In the Commissioner's reply brief, she repeats her argument that "Dr. Gerding did not provide a medical opinion in this case that could be used to support Ms. Russell." ECF No. 22 at 3. The court disagrees with the Commissioner and finds instead that Dr. Gerding's statement constitutes a "medical opinion." The court remands to the ALJ to explain what weight he assigned to Dr. Gerding's opinion as Rouse's treating physician.

Adjudicators should consider all medical opinions that are entered as evidence, and generally "give more weight to medical opinions from [plaintiffs'] treating sources." § 404.1527(c)(2); see Lewis v. Berryhill, 858 F.3d 858, 866–67 (4th Cir. 2017) ("[T]he ALJ is required to give 'controlling weight' to opinions proffered by a claimant's treating physicians so long as the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' . . ."), Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (finding that controlling weight should be given to a treating physician's opinion if not inconsistent with other substantial evidence in the record). Adjudicators should also "always give good reasons in

---

[5] The court is restricted to reviewing whether substantial evidence supports the ALJ's findings, and whether the ALJ correctly applied the law. A party may not interpret the ALJ's decision and ask the court to affirm this interpretation.

9

[their] notice of determination or decision for the weight [they] give [a] treating source's medical opinion." § 404.1527(c)(2); see Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 100 (4th Cir. 2015) ("An ALJ is required to assign weight to every medical opinion in a claimant's record."), Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) ("We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence."). Here, the ALJ states that Dr. Gerding is a treating physician. Tr. 26. However, whether Dr. Gerding's opinion constitutes a "medical opinion" must first be determined before deciding whether the ALJ properly addressed the opinion in accordance with §404.1527(c).

Section 404.1527(a)(1) defines medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."[6] § 404.1527(a)(1). Medical opinions may include a detailed analysis of the claimant's functional limitations, using language similar to that in an ALJ's assessment of the plaintiff's RFC. However, that level of specificity is not necessarily required, as the purpose of the "medical opinion" is for the treating physician to provide the adjudicator with an adequate assessment of the "nature and severity" of the claimed impairment. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (focusing on the

---

[6] Licensed physicians qualify as "acceptable medical sources." SSR 06-03P, at 1; see 20 C.F.R. § 416.913(a)(1) (listing licensed medical physicians as acceptable medical sources).

"treating physician's opinion on the <u>nature and severity</u> of the claimed impairment" when discussing medical opinions) (emphasis added).

In <u>Beck v. Astrue</u>, the ALJ originally determined that the claimant's treating neurosurgeon did not offer a specific assessment of the nature and severity of the claimant's impairments. <u>Beck v. Astrue</u>, 663 F. Supp. 2d 1212, 1217 (N.D. Ala. 2009). The treating physician had noted that the claimant's severe degeneration of the bones in her cervical spine caused "severe neck pain." <u>Id</u>. The district court disagreed with the ALJ, finding that the doctor's discussion of these symptoms "certainly qualifies as a medical opinion under the Commissioner's regulations." <u>Id</u>. at 1218. Likewise, in <u>Wider v. Colvin</u>, the ALJ originally determined that the treating physician's statements were not a "medical opinion," and refused to give them weight in accordance with the standard required for treating physicians. <u>Wider v. Colvin</u>, 2017 WL 1169558, at *8 (E.D.N.Y. Mar. 29, 2017). In Wider the treating physician had diagnosed the claimant with schizoaffective disorder, insomnia, and personality disorder, and had prescribed several drugs for psychological issues. <u>Id</u>. at 7. The physician next offered his opinion about the claimant's "impulse control, insight, judgment, attention, memory, mood, and his ability to carry out daily responsibilities." <u>Id</u>. The Commissioner argued that these statements were not medical opinions, but were simply treatment notes. <u>Id</u>. at 5. The court, however, found that the doctor's notes were medical opinions because they explicitly included diagnoses and "statements reflecting judgments about the nature and severity of the Plaintiff's impairment." <u>Id</u>.

In Rouse's case, the Commissioner argues that because Dr. Gerding "completed a form setting forth [only] Plaintiff's diagnoses, symptoms, and treatment," it was not a medical opinion, because it did not address the Rouse's functional limitations. ECF No. 20 at 3. However, the Commissioner does not give adequate weight to portions of Dr. Gerding's opinion that discuss Rouse's "physical and mental restrictions." Combined with her notes on Rouse's symptoms and diagnoses, Dr. Gerding's opinion presents an adequate picture of the "severity and nature" of Rouse's impairments, making it an acceptable medical opinion.

In <u>Beck</u>, the doctor's statements about the plaintiff's symptoms qualified as a medical opinion, because it sufficiently addressed the severity and nature of the impairment. <u>Beck</u>, 663 F. Supp. 2d at 1219. Similarly, Dr. Gerding's statements about the severity of Rouse's symptoms resulting from her diagnoses of PTSD, panic disorder, major depressive disorder, and borderline personality disorder qualify as a medical opinion, as they sufficiently address the nature and severity of her impairment. Dr. Gerding described how Rouse continued to show "extreme [symptoms] of PTSD," such as insomnia, anxiety, hypervigilance, panic attacks, flashbacks, nightmares, poor self-esteem, and depressed mood. Tr. 532. In <u>Wider</u>, the treating physician diagnosed the claimant, prescribed her medication, then opined on certain traits that would affect her interpersonal interactions and ability to carry out daily activities. <u>Wider</u>, 2017 WL 1169558, at *8. Likewise, Dr. Gerding's report lists Rouse's diagnoses and prescriptions, and then opines that Rouse's PTSD has resulted in avoidance behavior and poor interpersonal relationships, to the extent that Rouse did not understand "how to be real" or "understand what normal is due to her

treatment as a child," and that she was working to "find some kind of reality that she understands." Tr. 532.

Dr. Gerding's opinions constitute medical opinions, because they expound upon the "physical and mental restrictions" resulting from her diagnosed mental health conditions and discuss the extent of her ability to engage in society normally. They adequately describe the "nature and severity" or her impairments, and should have been evaluated as a medical opinion from a treating physician.

Therefore, remand for further consideration is appropriate. On remand, the ALJ should more adequately explain why it finds Russell's opinion not credible, and should describe the weight he gives to Dr. Gerding's medical opinion.

## IV. CONCLUSION

Based on the foregoing, the court **REJECTS** the magistrate judge's R&R, **REVERSES** the Commissioner's decision, and **REMANDS** the case for further administrative proceedings.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 29, 2017**
**Charleston, South Carolina**